IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STATE FARM FIRE & CASUALTY CO., )
                                )   Civ. No. 09-00530 ACK-LEK
            Plaintiff,          )
                                )
        v.                      )
                                )
ARTHUR THOMPSON and DENISE      )
THOMPSON,                       )
                                )
            Defendants.         )
                                )
_____ )

ORDER DENYING STATE FARM'S MOTION FOR SUMMARY JUDGMENT

PROCEDURAL BACKGROUND

On November 5, 2009, Plaintiff State Farm Fire &
Casualty Co. ("Plaintiff" or "State Farm") filed a complaint for
declaratory judgment against Arthur Thompson and Denise Thompson
(collectively, "Defendants" or the "Thompsons").

On March 22, 2010, Plaintiff filed a Motion for Summary
Judgment ("Motion").  At the same time, Plaintiff filed a
Separate and Concise Statement of Facts in Support of the Motion
for Summary Judgment ("Motion CSF" or "Mot. CSF").  Plaintiff
attached the March 22, 2010, declaration of its attorney David
Harada-Stone ("Harada-Stone Declaration") to the Motion CSF,
which authenticates that exhibits 1-3 are certified copies of the
attached documents and exhibits 4-7 are copies of orders granting

1

summary judgment in other insurance coverage cases.

On April 1, 2010, Defendants filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Opposition" or "Opp."). Defendants also filed a Concise Statement of Facts in Opposition to Plaintiff's Motion ("Opp. CSF"). Defendant attached a declaration of Denise Thompson dated March 30, 2010, to the Opposition CSF ("Thompson Declaration"). Defendants also attached the April 1, 2010, declaration of their attorney Ward D. Jones ("Jones Declaration"), which authenticates exhibits 1-9 as true and correct copies of the attached documents.

On April 12, 2010, Plaintiff filed a Reply Memorandum in Support of its Motion for Summary Judgment ("Reply").

A hearing was held on Plaintiff's Motion on April 26, 2010. At the hearing, the Court requested supplemental briefing on the effect of RLI Ins. Co. v. Thompson, Civ. No. 09-00345, 2010 WL 1438925 (D. Haw. Apr. 12, 2010), on this motion.

On May 3, 2010, both parties submitted their supplemental briefing.

On May 20, 2010, State Farm Fire & Casualty Company filed a Supplemental Declaration in Support of Motion for Summary Judgment; Exhibit 8. Doc. No. 26.

## FACTUAL BACKGROUND[1]

On May 5, 2005, Defendants entered into an agreement with Thomas and Janet Davis (the "Davises") for the sale of a residence in Kihei on Maui. Mot. CSF ¶ 2. On October 2, 2008, the Davises filed a First Amended Complaint in <u>Davis v. Thompson</u>, Civ. No. 08-1-0490(1) in the Circuit Court of the Second Circuit, State of Hawaii (the "Underlying Lawsuit") for claims allegedly arising out of the purchase and sale of the Kihei home. Mot. CSF ¶¶ 1, 13.[2]

The Davises assert claims against the Thompsons, Maui Real Estate Ventures, Inc. (the broker for the transaction), Carmen Y. Ferri (the real estate agent), and Doe Defendants 1-10 for (1) fraud; (2) breach of contract; (3) negligence; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. Mot. CSF ¶ 13. They seek general, special, treble, and punitive damages as well as costs and attorneys' fees. <u>Id.</u>

The Davises allege that the Thompsons provided them with a Seller's Real Property Disclosure Statement in conjunction

---

[1] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[2] The Thompsons do not dispute any of the facts set forth in State Farm's Concise Statement of Facts. <u>See</u> Opp. CSF. ¶¶ 1-21. The Thompsons do, however, set forth a number of their own additional facts in opposition. <u>See</u> Opp. CSF ¶¶ 22-38.

with the transaction.  Mot. CSF ¶ 3.  According to the Davises'
Complaint, the Thompsons had the house inspected for termites in
March 2005.  Id. ¶ 4.  The resulting report allegedly showed
active termite infestation and/or termite damage, including
damage to eaves, beams, and the home's interior and exterior.
Id.  The Thompsons allegedly had the house tented for termites
in April 2005 and then hired a contractor to perform construction
work on the house.  Id. ¶ 5.  The Davises allege that the
Thompsons did not have the contractor repair the termite damage
found in March 2005 or remove the damaged parts of the structure.
Id. ¶ 6.  Rather, the Davises allege that the Thompsons
instructed the contractor to "cover over" the termite damage.
Id. ¶ 6.  The house was inspected again in December 2005, and no
signs of live termite activity were found.  Id. ¶ 8.

        The Davises allege that they were provided with a copy
of the December 2005 termite inspection report, but never were
given a copy of the March 2005 report prior to the sale.  Id. ¶¶
8, 9.

        The Davises further allege that prior to closing, they
hired a contractor to inspect the residence.  Id. ¶ 10.  The
contractor allegedly requested permission to remove some of the
work performed by the Thompsons' contractor in May 2005 in order
to inspect the material underneath.  Id.  According to the
Davises, the Thompsons denied this request and represented

4

through their real estate broker that all the damage beneath the siding had been repaired. Id. The Davises allege they proceeded with the transaction based on the Thompsons' representations. Id. ¶ 11.

After the Davises began renovations on the property, they discovered a large amount of termite damage, dry rot damage, and other problems. Id. ¶ 12. Thus, the Davises arranged for another termite inspection, at which point the Davises allegedly learned about the March 2005 inspection. Id. The Davises then brought the Underlying Lawsuit against, inter alios, the Thompsons.

At the time of the events alleged in the Underlying Lawsuit, the Thompsons were the named insureds under a State Farm Homeowners Policy, No. 11 E5-2346-1 (the "Homeowners Policy"). Id. ¶ 14. Additionally, the Thompsons were also insured under a Personal Liability Umbrella Policy, No. 11-EG-5660-4, issued by State Farm (the "Umbrella Policy," together the "Policies"). Id. ¶ 18.

Plaintiff State Farm moves for summary judgment on the grounds that the material facts relevant to this insurance coverage matter are not in dispute and State Farm is entitled, as a matter or law, to a ruling that it has no duty to defend or indemnify the Thompsons for claims asserted against them in the Underlying Lawsuit. Mot. Mem. at 1.

## STANDARD

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment is therefore appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal citation omitted).[3/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court

---

[3/]Disputes as to immaterial issues of fact do "not preclude summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

as to the absence of a genuine issue of material fact.  <u>Celotex</u>,
477 U.S. at 323; <u>Miller v. Glenn Miller Productions</u>, 454 F.3d
975, 987 (9th Cir. 2006).  The moving party may do so with
affirmative evidence or by "'showing'--that is pointing out to
the district court--that there is an absence of evidence to
support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.[4]

     Once the moving party satisfies its burden, the
nonmoving party cannot simply rest on the pleadings or argue that
any disagreement or "metaphysical doubt" about a material issue
of fact precludes summary judgment.  <u>See</u> <u>Celotex</u>, 477 U.S. 323;
<u>Matsushita Elec.</u>, 475 U.S. at 586; <u>Cal. Arch. Bldg. Prods., Inc.
v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir.
1987).[5]  The nonmoving party must instead set forth "significant
probative evidence" in support of its position.  <u>T.W. Elec. Serv.
v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

_____

     [4]When the moving party bears the burden of proof at trial,
that party must satisfy its burden with respect to the motion for
summary judgment by coming forward with affirmative evidence that
would entitle it to a directed verdict if the evidence were to go
uncontroverted at trial.  <u>Miller</u>, 454 F.3d at 987 (quoting <u>C.A.R.
Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.</u>, 213 F.3d
474, 480 (9th Cir. 2000)).  When the nonmoving party bears the
burden of proof at trial, the party moving for summary judgment
may satisfy its burden with respect to the motion for summary
judgment by pointing out to the court an absence of evidence from
the nonmoving party.  <u>Miller</u>, 454 F.3d at 987.

     [5]Nor will uncorroborated allegations and "self-serving
testimony" create a genuine issue of material fact.  <u>Villiarimo
v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002);
<u>see also</u> <u>T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n</u>, 809
F.2d 626, 630 (9th Cir. 1987).

1987).  Summary judgment will thus be granted against a party who
fails to demonstrate facts sufficient to establish an element
essential to his case when that party will ultimately bear the
burden of proof at trial.  See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the
court must construe all evidence and reasonable inferences drawn
therefrom in the light most favorable to the nonmoving party.
See T.W. Elec. Serv., 809 F.2d at 630-31.[6/]  Accordingly, if
"reasonable minds could differ as to the import of the evidence,"
summary judgment will be denied.  Anderson, 477 U.S. at 250-51

### DISCUSSION

As a preliminary matter, the Court notes this case is
related to RLI Ins. Co. v. Thompson, No. 09-00345 SOM-BMK, which
is based on the same Underlying Complaint.  The same day that
reply briefing was due on this motion, Chief Judge Mollway denied
RLI Insurance Company's motion for summary judgment, which sought
a declaration that RLI Insurance Company had no duty to defend or
indemnify the Thompsons.  2010 WL 1438925 (D. Haw. Apr. 12,
2010).  These are precisely the type of cases that should be
adjudicated by the same judge.  Given that both of these actions
involve interpretation of the exact same Underlying Complaint

---

[6/]At the summary judgment stage, the court may not make
credibility assessments or weigh conflicting evidence.  Anderson,
477 U.S. at 249; Bator v. State of Hawaii, 39 F.3d 1021, 1026
(9th Cir. 1994).

(and fairly similar insurance policies), it would have been substantially more expeditious for the same judge to preside over these cases, and the parties should have filed a related case notice.   See   Local Rule 40.2.[7]

State Farm seeks summary judgment on its claims for declaratory judgment that it has no duty to defend or indemnify the Thompsons in the Underlying Lawsuit based on the Policies. Mot. Mem. at 1.   State Farm also seeks summary judgment on the Thompsons' Counterclaims.   Id.

The insurer's duty to defend and duty to indemnify are

---

[7]In its entirety, Local Rule 40.2 reads:

> Whenever it shall appear that civil actions or
> proceedings involve the same or substantially identical
> transactions, happenings, or events, or the same or
> substantially the same parties or property or subject
> matter, or the same or substantially identical
> questions of law, or for any other reason said cases
> could be more expeditiously handled if they were all
> heard by the same judge, then the chief district judge
> or any other district judge appointed by the chief
> district judge in charge of the assignment of cases may
> assign such cases to the same judge.   Each party
> appearing in any such action may also request by
> appropriate motion that said cases be assigned or
> reassigned to the same judge.

Local Rule 40.2
The Court further notes that it appears that State Farm was not aware of the RLI case as it specifically noted in its Rule 16 Scheduling Conference Statement that there were no related cases and counsel at the hearing was unaware of the decision in RLI, although it appears based on the papers that both RLI and State Farm are defending the Thompsons in the Underlying Lawsuit under a reservation of rights.   The Thompsons do not appear to have filed a Rule 16 Scheduling Conference Statement.

separate and distinct duties.  See <u>Dairy Road Partners v. Island Ins. Co., Ltd.</u>, 92 Hawai'i 398, 412, 992 P.2d 93, 107 (2000) (quoting <u>Sentinel Ins. Co. v. First Ins. of Hawaii</u>, 76 Hawai'i 277, 291, 875 P.2d 894, 908 (1994)).[8/]  The Court will address each duty separately, after summarizing the contents of the policies.

## I.    The Homeowners Policy

The Homeowners Policy affords liability insurance via a standard form with State Farm entitled Homeowners Policy.  See Motion CSF Ex. 2.  The Homeowners Policy contains the following language regarding liability coverage for bodily injury and property damage:

> If a claim is made or a suit is brought against an <u>insured</u> for damages because of <u>bodily injury</u> or <u>property damage</u> to which this coverage applies, caused by an <u>occurrence</u>, we will:
>
> 1.    pay up to our limit of liability for the damages for which the <u>insured</u> is legally liable; and
>
> 2.    provide a defense at our own expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends

---

[8/] State Farm argues that Hawai'i law applies to this Case. Mot. Mem. at 15-16.  The Thompsons have not argued otherwise, and the Court agrees that Hawai'i law is applicable.  "Hawaii's choice-of-law approach creates a presumption that Hawaii law applies unless another state's law would best serve the interests of the states and persons involved."  <u>Abramson v. Aetna Cas. & Sur. Co.</u>, 76 f.3d 304, 305 (9th Cir. 1996) (internal quotations omitted).

> when the amount we pay for damages, to effect
> settlement or satisfy a judgment resulting
> from the <u>occurrence</u>, equals our limit of
> liability.

<u>Id.</u> at 15 (internal page numbering) (21 of 38 (as numbered by ecf)), § 2 Coverage L (emphasis in original).  The Homeowners Policy limits liability coverage for the Thompsons to $100,000.00 for each occurrence.  <u>Id.</u> at the cover page to the Homeowners Policy (2 of 38); <u>see also</u> <u>id.</u> at 18 (24 of 38), § 2 Conditions ¶ 1.

The Policy only covers bodily injury and property damage that is caused by an occurrence.  <u>Id.</u> at 15 (21 of 38), § 2 Coverage L.  The Policy defines "occurrence" as:

> an accident, including exposure to conditions, which
> results in:
>
> a.   <u>bodily injury</u>; or
> b.   <u>property damage</u>;
>
> during the policy period.  Repeated or continuous
> exposure to the same general conditions is considered
> to be one <u>occurrence</u>.

<u>Id.</u> at 2 (8 of 38), Definitions ¶ 7 (emphasis in original).  No definition of "accident" is contained in the Homeowners Policy. The Homeowners Policy defines "property damage" as:

> physical damage to or destruction of tangible property,
> including loss of use of this property.  Theft or
> conversion of property by any insured is not property
> damage.

<u>Id.</u>, Definitions ¶ 8 (emphasis in original omitted).  The Homeowners Policy defines "bodily injury" as "physical injury,

11

sickness or disease to a person" which does not include "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." _Id._, Definitions ¶ 1.

The Homeowners Policy also lists a number of exclusions to liability coverage, several of which are relevant here. Specifically, the Homeowners Policy excludes any liability coverage for bodily injury or property damage: "(1) which is either expected or intended by the _insured_; or (2) which is the result of willful and malicious acts of the _insured_." _Id._ at 16 (22 of 38), § 2 Exclusions ¶ 1.a. (emphasis in original).  The Homeowners Policy also excludes liability coverage for "_property damage_ to property currently owned by any _insured_." _Id._ at 17 (pg. 23 of 38), § 2 Exclusions ¶ 2.b. (emphasis in original).

## II.  The Umbrella Policy

The Umbrella Policy affords additional personal liability insurance via a standard form entitled the Personal Liability Umbrella Policy.  Mot. CSF Ex. 3.  The Umbrella Policy provides coverage up to $2,000,000.00 per occurrence.  _Id._ at cover page to the policy (2 of 18).  The Umbrella Policy was identified as being in excess over all other valid and collectible insurance.  _Id._ at 7 (12 of 18), Other Conditions ¶ 5.

12

The Umbrella Policy provides: "If you are legally obligated to pay damages for a <u>loss</u>, we will pay your <u>net loss</u> minus the <u>retained limit</u>. Our payment will not exceed the amount shown on the <u>Declarations</u> as well as Policy Limits - Coverage L - Personal Liability" Ex. 3 at 3 (8 of 18), Coverages ¶ 1.  The Umbrella Policy defines a "loss" as

> an accident, including injurious exposure to conditions, which results in bodily injury or property damage during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one loss.

Mot. CSF Ex. 3 at 16 of 18, Definitions ¶ 6.  "Property damage" is defined by the Umbrella Policy as "physical damages to or destruction of tangible property.  This includes the loss of use caused by injury or destruction." <u>Id.</u> at 2 (7 of 18) Definitions ¶ 11.  Bodily Injury is defined as "physical injury, sickness, disease, emotional distress or mental injury to a person.  This includes required care, loss of services and death resulting therefrom." <u>Id.</u> at 15 of 18, Definitions ¶ 17.

The Umbrella Policy also states: "When the claim or suit is covered by this policy, but not covered by any other policy available to you . . . we will defend the suit against you." <u>Id.</u>, Coverages ¶ 2.b.  The Umbrella Policy excludes from coverage: (1) property damage that "is either expected or intended by you"; (2) property damage "to any person or property which is the result of your willful and malicious act, no matter

13

at whom the act was directed"; and (3) property damage to "your own property."  Ex. 3 at 4 (9 of 18), 16 of 18, Exclusions ¶¶ 2, 3.a.

## III. State Farm's Duty to Defend

"Hawaii insurance law provides for a broad duty to defend arising whenever the pleadings raise a potential for indemnification liability of the insurer to the insured." Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004); First Ins. Co. of Hawaii, Inc. v. State of Hawaii, 66 Haw. 413, 420, 665 P.2d 648, 653 (1983).  "The duty to defend exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined at the time suit is filed."  Burlington, 383 F.3d at 944; see also First Ins., 66 Haw. at 420, 665 P.2d at 653.  Furthermore, when a suit raises a potential for indemnification liability of the insured for even one claim, the insurer has the duty to accept the defense of the entire suit even though other claims of the complaint may fall outside the policy's scope.  See Burlington, 383 F.3d at 944; First Ins., 66 Haw. at 417, 665 P.2d at 652.

"Hawaii adheres to the 'complaint allegation rule.'" Burlington, 383 F.3d at 944 (quoting Pancakes of Hawaii, Inc. v Pomare Props. Corp., 85 Hawai'i 286, 291, 944 P.2d 83, 88 (App. 1997)).  Therefore, the duty to defend is limited to situations

14

where the underlying pleadings have alleged a claim for relief

which falls within the terms for coverage of the insurance

contract.  Id. (emphasis added).  "'Where the pleadings fail to

allege any basis for recovery within the coverage clause, the

insurer has no obligation to defend.'"  Id. at 944-45 (quoting

Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co., 76

Hawai'i 166, 169, 872 P.2d 230, 233 (1994)).  In determining

whether the insurer owes a duty to defend, a court may only

consider extrinsic evidence outside of the underlying pleadings

if "none of the facts on which [the party] relies might be

resolved differently in the underlying lawsuit."  Dairy Road, 92

Hawai'i at 422, 992 P.2d at 117.

For a court to issue a declaration of law at summary

judgment that the insurer has no duty to defend, the insurer has

the burden of proving that there is "no genuine issue of material

fact with respect to whether a possibility exist[s]" that the

insured will incur liability for a claim covered by the policy.

Id. at 412, 992 P.2d at 107 (emphasis in original).  In other

words, State Farm is required to prove that it would be

impossible for the Davises to prevail against the Thompsons in

the state court litigation on a claim covered by either the

Homeowners Policy or the Umbrella Policy.  Id. at 412-413.

An insurer's duty to defend is contractual in nature

and a court must examine the terms of the policy to determine the

scope of the duty.[9/]  <u>Commerce & Indus. Ins. Co. v. Bank of Hawaii</u>, 73 Haw. 322, 325, 832 P.2d 733, 735 (1992).  As discussed above, the Homeowners Policy requires State Farm to defend the Thompsons  "[i]f a claim is made or a suit brought . . . for damages because of <u>bodily injury</u> or <u>property damage</u>," but only where that bodily injury or property damage is "caused by an <u>occurrence</u>."  <u>See</u> Motion CSF Ex. 2 at 15 (21 of 38), § 2 Coverage L.  The Umbrella Policy requires State Farm to defend the Thompsons if "a claim or suit is covered by the policy, but not covered by any other policy available" to the Thompsons.  Ex. 3 at 3 (pg. 8 of 18), Coverages ¶ 2.b.  The Umbrella Policy provides coverage for a "loss," which is defined as an "accident, including injurious exposure to conditions, which results in bodily injury or property damage during the policy period."  Mot. CSF Ex. 3 at 16 of 18, Definitions ¶ 6.  Thus, to establish coverage, both Policies require an "accident" also referred to as an "occurrence."

---

[9/] Insurance policies are "subject to the general rules of contract construction."  <u>Dairy Road</u>, 92 Hawai'i at 411, 992 P.2d at 106 (quoting <u>First Ins. Co.</u>, 66 Haw. at 423-24, 665 P.2d at 655).  Insurance contracts are contracts of adhesion, so they must be construed liberally in favor of the insured, and ambiguities must be resolved against the insurer.  <u>State Farm Fire & Cas. Co. v. Gorospe</u>, 106 F. Supp. 2d 1028, 1031 (D. Haw. 2000) (citing <u>Foote v. Royal Ins. Co. of Am.</u>, 88 Hawai'i 122, 124, 962 P.2d 1004, 1006 (App. 1998)).  "Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson."  <u>Dairy Road</u>, 92 Hawai'i at 412, 992 P.2d at 107 (citation omitted).

Here, the parties dispute whether there may have been a triggering "occurrence" or "accident." The dispute is whether the Davises' claimed damages were "caused by an occurrence," i.e., whether such damages were caused by an "accident" that resulted in bodily injury or property damage. The Court will thus examine the Underlying Complaint.

In the "First Cause of Action: Fraud," the Davises allege that the Thompsons' conduct constitutes fraud and they are entitled to compensatory and punitive damages from the Thompsons ("Count I"). Mot. CSF Ex. 1 at 11 of 16. In the "Second Cause of Action: Breach of Contract," the Davises alleged the Thompsons conduct was a breach of the contract of sale of the house and that they are thus entitled to compensatory damages from the Thompsons ("Count II"). Id. at 12 of 16. In the "Third Cause of Action: Negligence" the Davises allege that "defendants conduct above described was negligent." Id. The Davises also allege more specifically that "Defendants Ferri and Maui Real Estate Ventures Inc. dba: Keller Williams Realty Maui negligently failed to insure that all pertinent information regarding the condition of the house was supplied to Plaintiffs prior to the closing of the purchase" and "to insist that Defendant Thompsons permit Plaintiff's inspector (Keller) to remove and examine behind the work performed by Buddy L. & Sons" ("Count III"). Id. In the "Fourth Cause of Action: Intentional Infliction of Emotional

Distress," the Davises allege that defendants' conduct was intentional and as a result they have "suffered emotional distress, great mental anguish, humiliation, embarrassment and other injuries" ("Count IV"). Id. at 13 of 16. Finally, in the "Fifth Cause of Action: Negligent Infliction of Emotional Distress," the Davises allege that defendants' conduct was negligent and as a result the Davises "suffered emotional distress, great mental anguish, humiliation, embarrassment and other injuries" ("Count V") Id.

### 1. There is No Occurrence for the Claims That Require Intentional Conduct for a Finding of Liability

Within the five causes of action asserted by the Davises, Count I (Fraud) and Count IV (Intentional Infliction of Emotional Distress) require that the Thompsons acted intentionally to be found liable. "As any injury caused by [an] intentional act would be 'the expected or reasonably foreseeable result of the insured's own intentional acts or omissions,' the intentional non-disclosures alleged in these counts does not constitute an 'accident' and is thus not an 'occurrence' . . . under Hawaii insurance law." State Farm Fire & Cas. Co. v. Scott, Civ. No. 06-00119 SOM-BMK,2007 U.S. Dist. Lexis 8255 at *18-19 (D. Haw. Jan. 24, 2007) (quoting Hawaiian Holiday Macadamia Nut. Co., 76 Haw. at 170, 872 P.2d at 234); see also Jenkins, slip op. at 18-19; RLI Ins. Co., 2010 WL 1438925 at *7. Thus, the First and Fourth Causes of Action are not covered by

either of the Policies.[10/]

### 2. There is No Occurrence Based on the Breach of Contract Claim

The Davis' Second Cause of Action, Breach of Contract, does not give rise to an occurrence.  Courts in this district have repeatedly held that claims which, "ar[i]se solely because of a contractual relationship," do not result in an occurrence that could be covered by the type of policies at issue here.  See Scott, 2007 U.S. Dist. Lexis 8522, at *24; Burlington, 383 F.3d at 948-49 (interpreting Hawai'i law); Jenkins, slip op. at 19; see also RLI Ins. Co., 2010 WL 1438925 at *8-*9.

### 3. The Davis' Negligence Claim Raises the Possibility of an Occurrence, Thus, There Is a Duty to Defend

Although State Farm cites cases finding no duty to defend where claims arise out of alleged misrepresentations in connection with a contract, the Thompsons assert that there is a duty to defend here because there is a possibility of a finding of negligence (without intent) on the claims alleged in the Underlying Complaint.  The Thompsons argue that "[o]ne of the unique factual allegations contained in the Davis Complaint is that [the] Davises allege [the] Thompsons' real estate broker negligently failed to insist that Defendant Thompsons permit

---

[10/] The Court notes that these claims would also be excluded by the Intentional Act Exclusion of the Policies. See Mot. Mem. at 29; Mot. CSF Ex. 2 at 22 of 38, Exclusions ¶ 1; Mot. CSF Ex. 3 at 16 of 18, Exclusions ¶ 2.

Davises' home inspector (Keller) to remove and examine behind the work performed by Buddy L. & Sons, the Thompsons' contractor who remodeled the home." Opp. at 7. Thus, they assert "[t]hese additional factual allegations by [the] Davises set the Davises' negligence claims apart from the pure 'negligent misrepresentation' claims more common to the various federal decisions cited by State farm including <u>Burlington</u>."

The Court disagrees. The Court is not persuaded by the Thompsons' argument that "unlike the facts in <u>Burlington</u>, the above acts of negligence alleged by [the Davises] did not arise under the sales contract; rather they are independent acts or breaches of duty of care and therefore premised on general negligence principles." Opp. at 12-13. The Court agrees that the Thompsons' argument:

> [i]gnores the fact that the duty the Davises allege was breached by the failure of the Thompsons and their real estate broker to permit a more invasive inspection did not exist independently from the contract for the sale of the Thompsons' home. Certainly, no stranger walking in off the street could claim a right to tear up the Thompsons' walls to look for termite damage. Rather, the duty asserted by the Davises arises, if at all, from the contract for sale. Its breach necessarily constitutes a breach of that contract and not an 'occurrence' or 'accident' under the subject policies.

Reply at 6-7.

Prior case law supports State Farm's argument. In <u>Jenkins</u>, this Court concluded

> even though the Stirlins could potentially succeed on the remaining claims without a finding of intentional

20

> misrepresentation (i.e., even if the Jenkins were only
> negligent), these claims only arise out of the Jenkins'
> obligations under the contract for the sale of the
> Property.  Therefore, these claims also do not allege
> any facts that would potentially be an 'occurrence'
> covered by the Policy.

Jenkins, slip op. at 20 (citing Burlington, 383 F.3d at 949

("'[I]t is clear from the record that all of the claims in the

underlying actions have a contractual basis . . . .  Since [the

insured] seeks recovery here for tort and contract claims that

arise from the contractual relationship, the court finds that the

underlying lawsuits are outside the scope of policy coverage in

this case.'")).[11]

---

[11] In Jenkins, the Court observed "as did the Ninth Circuit
in Burlington and the district court in WDC Venture, Scott, and
others, that the Hawai'i Supreme Court has not yet determined
whether negligence and other non-contract claims arising out of a
contract can be covered under liability insurance.  See
Burlington, 383 F.3d at 946 (noting that '[t]he Hawaii Supreme
Court has held, however, that where an underlying complaint
alleges an intentional breach of contract, there is no occurrence
that triggers an insurer's duty to defend'); WDC Venture, 938 F.
Supp. at 677-78; Scott, 2007 U.S. Dist. LEXIS 8255 at *19.  The
Court finds, however, that the analysis in these cases is
consistent with Hawai'i insurance law and is an accurate
'prediction of how the Hawaii Supreme Court would decide the
issue.'  Burlington, 383 F.3d at 944 (quoting Helfand v. Gerson,
105 F.3d 530, 537 (9th Cir. 1997))" Jenkins, slip op. at 21 n.18.
These observations are equally valid today.  Furthermore, the
Intermediate Court of Appeals of the State of Hawai'i has
recently affirmed this line of cases.  See Group Builders, Inc. v.
Admiral Ins. Co., No. 29402, 2010 WL 1985827, *7 (Haw. App. May
19, 2010) (holding that "tort-based claims, derivative of these
breach of contract claims, are also not covered under CGL
policies.").  However, as discussed infra, Judge Mollway and this
Court conclude that the Underlying Complaint here potentially
alleges an independent negligence claim based upon the Thompson's
failure to properly fix earlier property damage.

The Ninth Circuit in Burlington held that claims for alleged shoddy construction as well as negligent and intentional infliction of emotional distress did not describe an "occurrence" within the meaning of the insured's commercial general liability policy.  The Ninth Circuit held that:

> Though certain allegations in the homeowners' counterclaim are couched in terms of negligence, it is undisputed that Oceanic had entered into a contract to construct a home for the homeowners.  The counterclaim then alleges that Oceanic breached its contractual duty by constructing a residence "substantially inferior to the standard of care and quality which had been agreed." Other than a breach of that contractual duty, the facts in this case do not reflect a breach of an independent duty that would otherwise support a negligence claim.

Burlington, 383 F.3d at 948.

Burlington has been applied repeatedly in this district.  See, e.g., State Farm Fire & Cas. Co. v. Scott, Civ. No. 06-00119 SOM-BMK, 2007 U.S. Dist. Lexis 8255, at *18-20 (D. Haw. Jan. 24, 2007) (claims for negligence, negligent misrepresentation and negligent infliction of emotional distress arising from alleged misrepresentations and failure to disclose in connection with sale of home did not arise from an occurrence); State Farm Fire & Cas. Co. v. CTC Construction Co., Ltd., Civ. No. 05-00494 DAE-LEK, slip op. at 13-15 (D. Haw., June 19, 2006) (holding under Burlington that a claim for "negligent" failure to disclose defects in the sale of real estate arose out of alleged breach of a contractual duty and thus did not arise

22

from an occurrence or accident under the terms of liability
policy); State Farm Fire & Cas. Co. v. Violeta J. Ramos and
Rolando Ramos, Civ. No. 06-00661 HG-LEK (Sept. 7, 2007) (holding
that the underlying claims were not covered because they were
either based on the real estate sales contract or otherwise
premised on the existence of the contractual relationship between
the parties); 3139 Properties, LLC v. First Specialty Ins. Co.,
Civ. No. 06-00619 SOM-LEK, 2007 WL 1701922 (D. Haw. June 8, 2007)
(finding that the "possible claims of negligent supervision and
vicarious liability based on the negligence of the independent
contractors building the project arose solely because of the
contractual relationship" and holding that there was no duty to
defend under the policy at issue).

The Ninth Circuit has also found that a failure to
disclose and alleged misrepresentations do not constitute an
"occurrence." See Safeco Ins. Co. of America v. Andrews, 915
F.2d 500 (9th Cir. 1990). There, the Ninth Circuit explained:

> Kuehl is seeking damages for Andrews' alleged
> negligence in failing to inspect and inform him of
> defects in the property and for misrepresentation
> "materially affecting the value or desirability" of the
> property. Kuehl's claims do not expose Andrews to
> liability for any damage to tangible property, but
> rather for economic loss resulting from Andrews's
> alleged failure to discover and disclose facts relevant
> to the property's value and desirability. Such harm is
> outside the scope of the policy. See Allstate
> Insurance Co. v. Miller, 743 F. Supp. 723 (N. D. Cal.
> 1990). Although the defective condition of the
> property is an element of Kuehl's claims, the defects
> cannot, even when interpreting the policy broadly, be

23

considered the <u>cause</u> of Kuehl's damages.  The cause of
the damage was Andrews' alleged misrepresentations,
which are not an "occurrence" or a "peril insured
against" under the terms of the policy.  There is,
therefore, no potential for liability that arguably
comes within the scope of the insurance coverage
provided by Safeco.

<u>Safeco</u>, 915 F. 2d at 502.

However, these cases do not completely resolve the
issues here.  When evaluating a motion for summary judgment, the
court must construe all evidence and reasonable inferences drawn
therefrom in the light most favorable to the nonmoving party.
See <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-631.  Thus, construing the
complaint in the light most favorable to the Thompsons, as Judge
Mollway noted, "it is unclear whether the Davises are asserting
that the Thompsons' conduct exacerbated existing property damage.
If the Thompsons' conduct caused even more property damage, the
<u>Safeco</u> analysis on the point might be inapplicable."  <u>RLI Ins.
Co.</u>, 2010 WL 1438925 at *7.  Judge Mollway further elaborated,
"if the failure to properly fix the earlier damage (e.g. dry rot)
caused further property damage (e.g., more extensive dry rot),
such a claim could possibly be covered under the [Policies], as
the alleged negligence might be accidental conduct causing
'property damage.'"  <u>Id.</u>  Judge Mollway thus held that

RLI does not establish as a matter of law that it is
impossible for the negligence claim in the underlying
lawsuit to be covered by the Policy.  Accordingly,
based on the current record, RLI does not meet its
burden of showing that it has no duty to defend or
indemnify the Thompsons with respect to the Davises'

24

negligence claim.

Id.

Like Judge Mollway, this Court construes the Underlying Complaint as possibly alleging negligent conduct that might be accidental conduct causing property damage.  Thus, for the same reasons Judge Mollway held RLI had not met its burden, State Farm is unable to establish as a matter of law that it is impossible for the negligence claim in the underlying lawsuit to be covered by the Policies.[12/]  Thus, the Court denies State Farm's motion for summary judgment.

> ### 4.   The Davis' Negligent Infliction of Emotional Distress Claim Raises the Possibility of a Covered Claim, Thus, There Is a Duty to Defend

Contract based tort claims do not trigger insurance coverage.  See Burlington, 383 F.3d at 946-48.  Thus, to the extent the Underlying Complaint asserts that the negligent disclosures caused the Davises emotional distress, those claims

---

[12/] The Court notes that State Farm has tried to distinguish RLI by arguing that "[u]nlike State Farm's motion for summary judgment in this case, which is based primarily on the absence of a covered 'occurrence' in the facts alleged in the underlying lawsuit filed by Thomas and Janet Davis, Judge Mollway's grant of summary judgment in the RLI case was apparently predicated primarily on the question of whether a covered loss could have occurred during the relevant policy period."  Plaintiff State Farm Fire & Casualty Company's Supplemental Memorandum In Support of Motion for Summary Judgment, Doc. No. 25 at 1.  However, the insurance policy at issue there is also an occurrence policy and RLI did argue before Judge Mollway that it had no duty to defend or indemnify because there was no covered occurrence.  See Memorandum in Support of Motion, RLI Ins. Co. v. Thompson, No 09-00345 (D. Haw. Feb. 11 2010).

are contract-related tort claims not covered under the Policies. See id. However, as Judge Mollway held, "to the extent the underlying state-court complaint seeks damages for emotional distress caused by the Thompsons' alleged negligence in fixing rot or other damage, the Davises might be alleging a 'bodily injury' caused by accidental conduct." RLI Ins. Co, 2010 WL 1438925 at *10. Although the Homeowners Policy specifically excludes emotional distress (Motion CSF Ex. 2, Definitions ¶ 1), the Umbrella Policy specifically includes emotional distress and thus, the negligent infliction of emotional distress claim provides a second possibly covered claim that raises the duty to defend. (Motion CSF Ex. 3 at 15 or 17, Definitions ¶ 17).

The Umbrella Policy provides independent coverage for losses, even when other policies do not apply. See State Farm v. Chun, Civ. No. 07-00156 SOM-LEK, 2007 WL 2026134 (D. Haw. July 6, 2007) (observing that a complaint, which alleged negligent infliction of emotional distress, alleged claims that "sound in negligence such that a claim for [bodily injury], within the meaning of the [Umbrella Policy] could be supported," although such claims were barred by another exception to the Umbrella Policy. (Alteration in original)). The Umbrella Policy states, "[i]f you are legally obligated to pay damages for a loss, we will pay your net loss minus the retained limit" and "[w]hen the claim or suit is covered by this policy, but not covered by any

26

other policy available to you: (1) we will defend the suit

against you . . . ."  Motion CSF Ex. 3 at 3 (8 of 18), Coverages

¶¶ 1-2.

Thus, while it seems unlikely that the Davises will

prevail on their negligent infliction of emotional distress claim

because they have not alleged that their emotional distress

resulted in physical injury or mental illness to them as required

by Hawai'i law (H.R.S. § 663-8.9), there is at least a

possibility of a covered claim and, consequently, State Farm is

obligated to defend the Thompsons in the Underlying Lawsuit.[13]

See Dairy Road, 92 Hawai'i at 412.

## IV.  State Farm's Duty to Indemnify

The duty to indemnify under the Policies is more narrow

than the duty to defend.  See Commerce & Indus. Ins. Co. v. Bank

of Hawaii, 73 Haw. 322, 326, 832 P.2d 733, 735 (1992) (holding

that the duty to defend under most liability insurance policies

is broader than the duty to indemnify).  To obtain summary

judgment that it owes no duty to indemnify, an insurer's burden

is less stringent than that for the duty to defend and merely

requires a showing of the absence of a genuine issue of material

fact with regard to coverage.  In other words:

---

[13] As Judge Mollway explained, as clarified by their answers
to interrogatories, "the Davises are only claiming that they were
'stressed' by having to spend time and money fixing their house."
RLI Ins. Co., 2010 WL 1438925 at *11.

> With respect to [an insurer's] prayer for a declaration that it had no duty to <u>indemnify</u> . . . , [the insurer is] <u>not</u> required to disprove any possibility that its insured might be liable for a claim asserted in the underlying lawsuits.  Rather, without reference to what the eventual outcome of the underlying lawsuits might actually be, [the insurer is] required only to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policies and the consequent entitlement to the entry of judgment as a matter of law.

<u>Dairy Road</u>, 92 Hawai'i at 413, 992 P.2d at 108 (emphasis in original).

In determining whether the insurer owes a duty to indemnify, the court may consider <u>any</u> competent evidence, even if the evidence might be subject to dispute in the underlying lawsuit.  <u>Id.</u> at 423, 992 P.2d at 118.

Because the Court construes the Underlying Complaint as alleging possibly covered claims of negligence and negligent infliction of emotional distress and in view of the lack of additional evidence submitted by State Farm, the Court cannot at this point rule that there is no genuine issue of material fact regarding the question of coverage for indemnification pursuant to the Policies.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff State Farm's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, May 20, 2010.

28



_____

Alan C. Kay
Sr. United States District Judge

<u>State Farm Fire & Casualty Co. v. Thompson</u>, Civ. No. 09-00530 ACK-LEK: Order
Denying Summary Judgment